# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Sharkey,                          :
                    Petitioner          :
                                        :
          v.                            :
                                        :
Unemployment Compensation               :
Board of Review,                        :    No. 2712 C.D. 2015
                    Respondent          :    Submitted: June 17, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED: October 19, 2016


          James Sharkey (Claimant) petitions this Court, pro se, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) December 10, 2015 order affirming the Referee's decision denying Claimant UC benefits under Section 402(b) of the UC Law (Law).[1]  Essentially, the issue for this Court's review is whether Claimant had a necessitous and compelling reason for leaving his employment.[2]  After review, we affirm.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to voluntary separation without cause of a necessitous and compelling nature).

[2] Claimant raised four issues in his Statement of Questions which are subsumed within the issue of whether Claimant had a necessitous and compelling reason to leave his employment:

> [(1)] How is it safe to drive two hours[,] with ten to twelve hours [of work,] then drive two hours back home[;] that's 16 hours out of a 24 hour day that leaves 8 hours to eat[,] shower [and] sleep?
>
> [(2)] How would it be right to work just to pay for room and meals for 5-6 days so I am able to work?

Claimant was employed as a full-time laborer/flagger at HRI, Inc. (Employer) from April 20, 2009 through August 31, 2015. Employer hired Claimant to work throughout the Commonwealth in the building of highways, roads and bridges. When Employer hired Claimant, he was informed that significant travel would be required. Claimant earned $15.35 per hour on non-prevailing wage jobs and $24.23 per hour on prevailing wage jobs. Although Employer provides hotel accommodations for some non-prevailing wage jobs, it does not reimburse overnight accommodations or other travel expenses for prevailing wage assignments.

Beginning on August 19, 2015, Claimant was assigned to work 5 to 6 days per week on a prevailing wage job in Johnstown, Pennsylvania, approximately 96 miles from Claimant's Howard, Pennsylvania home. Claimant's commute to and from the worksite totaled approximately 4 hours per day, and his 8 to 12-hour workday began at 6:30 a.m. On August 31, 2015, Claimant voluntarily terminated his employment due to the worksite's distance from his home. Claimant subsequently filed for UC benefits. On October 1, 2015, the Altoona UC Service Center declared that Claimant was not eligible for UC benefits under Section 402(b) of the Law. Claimant appealed and, on November 3, 2015, a Referee telephone hearing was held.

At the hearing, Claimant and Employer's human resources administrator Shalene Durham (Durham) testified. Claimant admitted that, when he was hired, he was informed that the job required travel, but claims he was told he would be assigned as close to his home as possible. Claimant explained that he terminated his

---

[(3)] Why should I carpool with a co-worker that pops open a can of beer as soon as [he] get[s] in [his] vehicle to go home?

[(4)] Is it really safe to work in a[n] environment that you get threatened, put down and bullied? Bottle rockets shot at you?

Claimant Br. at 8.

employment because he was concerned for his safety given the significant commute before and after his lengthy working hours. Claimant specifically stated that he had fallen asleep twice while driving home on August 31, 2015. Claimant conceded that he did not request a company car, and never made hotel accommodations. Further, Claimant acknowledged that he did not attempt to share a hotel room with other workers because most of the other employees had company cars and would not stay overnight. Claimant related that one individual might have stayed, but Claimant would not have been willing to stay with him. He also noted that there was only one individual that he could have carpooled with, and "he went a totally different way than what I would have [gone]. And besides that, I wouldn't have rode with the fellow because I know he drinks and drives every day and there was no way I was even going to attempt to ask him to ride together." Certified Record Item 8, Notes of Testimony, November 3, 2015 (N.T.) at 8. Claimant explained that he spoke to his supervisor about his travel concerns and, although the supervisor sympathized with him, the supervisor failed to take action. Claimant recognized that there was another management individual he could have spoken to, but did not do so because Claimant assumed he would not be accommodated.

Durham testified that there was continuing work available for Claimant and, if Claimant was having a problem with worksite transportation, he could have requested her assistance. She explained Employer's policy was that if an employee is "getting a prevailing wage rate, because it's so much higher than . . . a regular base rate, that [he] can choose to travel at [his] own expense because [he is] getting such a significantly higher rate." N.T. at 13. Durham expounded:

> And everyone who is onboard at [Employer] knows . . . that they will not be working close to their house because of the nature of our business. We build highways, roads, and bridges. They're not – all the highways and roads near your house are not always going to need to be fixed. . . . [O]nce

3

you fix one, you might have to move to the next one which may not be close. So everyone who comes onboard knows about the travel that's associated with the nature of the business.

*Id.* Durham stated that "a lot of the guys get together and they do carpool." N.T. at 12. Durham also recounted relative to Claimant:

We didn't know [of] . . . any complaints about traveling the distance because prior to that week, . . . [Claimant] was in Richland Township, but he was also in Reynoldsville . . . that same week and he's on a paving crew. They jump back and forth. . . . [Claimant's] never going to any one location more than a week or two. They're jumping all over the place. They're a few weeks here, few weeks there. So the travel issue was never brought up to management even though there's nothing that we could have done about it because [Claimant's] done it for years.

*Id.* at 14.

On November 4, 2015, the Referee affirmed the UC Service Center's determination, finding Claimant ineligible for UC benefits under Section 402(b) of the Law. Claimant appealed to the UCBR. On December 10, 2015, the UCBR adopted and incorporated the Referee's factual findings and legal conclusions, and affirmed the Referee's November 4, 2015 decision. Claimant appealed to this Court.[3]

Essentially, Claimant argues that he had a necessitous and compelling reason to terminate his employment. We disagree. "To be eligible for [UC], a claimant who has quit his job voluntarily must meet the burden of establishing that his action was for cause of a necessitous and compelling nature." *Cardwell v. Unemployment Comp. Bd. of Review*, 465 A.2d 145, 146 (Pa. Cmwlth. 1983). "Transportation inconvenience may justify a voluntary quit only if it presents an

---

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

4

insurmountable barrier to further employment despite an employee's reasonable effort to remedy it." *Thomas v. Unemployment Comp. Bd. of Review*, 560 A.2d 922, 924 (Pa. Cmwlth. 1989); *see also Stratford v. Unemployment Comp. Bd. of Review*, 466 A.2d 1119 (Pa. Cmwlth. 1983).

In *Thomas*, six claimants appealed from the UCBR orders affirming a referee's decision and denying UC benefits under Section 402(b) of the Law. The claimants were employed by a tree service company (the employer) to clear limbs from around power lines. The employer's work sites were temporary and the claimants were required to travel long distances thereto. The claimants terminated their employment when they were assigned to more distant worksites. The claimants were denied UC benefits because the referee and the UCBR determined that they had voluntarily quit without necessitous and compelling reasons. On appeal, this Court affirmed the UCBR's decision. The Court first noted that "[the claimants'] lengthy employment with [the employer] indicates that they had acknowledged and acquiesced in these employment conditions." *Thomas*, 560 A.2d at 923 (footnote omitted). The Court concluded:

> [The claimants], who have the burden to demonstrate necessitous and compelling cause to quit, *Chamoun v. Unemployment* [*Comp.*] [*Bd.*] *of Review*, . . . 542 A.2d 207 ([Pa. Cmwlth.] 1988), have failed to show that the distance to the new work site is so out of proportion to the original travel conditions as to constitute a material change necessitating their quit. *Cardwell* (five-week assignment involving one-way commute of 170 miles not necessitous and compelling cause)[;] *Stratford* . . . (three to four[-]week assignment to location [87] miles away[]).

*Thomas*, 560 A.2d at 924.

Similarly, in *Stratford*, an equipment operator (the claimant) resigned after learning that a new assignment was located 87 miles from his home. The UCBR

affirmed the referee's denial of UC benefits, and the claimant appealed therefrom. This Court stated:

> [W]e have recognized that a claimant may successfully assert that the employment initially deemed suitable, became so unsuitable as to be compelling cause for voluntary termination. This may be done by proof that employment conditions have changed or that the claimant was deceived or unaware of such conditions when entering into that employment. That rationale is inapplicable in the instant case, however, because the [UCBR] found, and we will not disturb that finding, that claimant was not the victim of surprise or deceit with regard to his wage rate or the distance involved. Also, in light of the fact that the job was to last only three to four weeks, claimant's decision to sever his employment relationship was a radical remedy.

*Id.* at 1121 (citation omitted).

In the instant matter, Claimant was aware at the time he began working for Employer that the position required travel throughout the state. In addition, as Durham testified, Claimant was "never going to any one location more than a week or two." N.T. at 14. Further, although we take Claimant's safety concerns seriously, Claimant failed to demonstrate that he made "reasonable effort[s] to remedy [the transportation issue]." *Thomas*, 560 A.2d at 924. Claimant admitted that he did not investigate hotel room costs and availability; he did not attempt to share a hotel room; he did not seek to car pool; and he did not contact Employer's human resources department to request assistance. Accordingly, we conclude that Claimant's "decision to sever his employment relationship was a radical remedy[,]" *Stratford*, 466 A.2d at 1121, and Claimant did not meet his burden of proving that he had a "necessitous and compelling cause to quit." *Thomas*, 560 A.2d at 924.

6

For all of the above reasons, the UCBR's order is affirmed.


_____

ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Sharkey,                           :
                    Petitioner           :
                                         :
          v.                             :
                                         :
Unemployment Compensation                :
Board of Review,                         :     No. 2712 C.D. 2015
                    Respondent           :

## O R D E R

AND NOW, this 19th day of October, 2016, the Unemployment Compensation Board of Review's December 10, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge